IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SAVE THE CUTOFF, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 6:23-cv-142 |
| | § | |
| IRON RIVER RANCH II, LLC, AND | § | |
| IRONHORSE UNLIMITED, INC. | § | |
| | § | |
| Defendants. | § | |

**Plaintiff Save the Cutoff's Original Complaint**

## I.    Introduction

1.     Save the Cutoff ("STC") brings this citizen suit against Iron River Ranch II, LLC ("Iron River Ranch"), and IronHorse Unlimited, Inc. ("IronHorse") (collectively, "Defendants"), under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq., also known as the Clean Water Act ("CWA" or "Act"). Defendants have discharged pollutants into Waters of the United States without a permit, in violation of 33 U.S.C. §§ 1311(a).

2.     STC asks this Court to enter declaratory and injunctive relief, remedial relief, civil penalties, and the award of costs, including attorney's and expert witness fees.

3.     In an effort to redress this ongoing problem, STC brings this citizen suit against Iron River Ranch and IronHorse under the CWA. *See* 33 U.S.C. § 1365(a)(1).

## II.    Jurisdiction & Venue

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA citizen suit to enforce effluent standards or limitations). The relief requested is authorized by 28 U.S.C. §§ 2201 and 2202 (further necessary or proper relief based on a declaratory judgment), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

5.      Venue is proper under 28 U.S.C. § 1391(b)(1), (2) and 33 U.S.C. § 1365(c), because Iron River Ranch and its unauthorized discharges all are located or occurred in the Tyler Division of the Eastern District of Texas.

### III.   Notice

6.      STC has complied with the CWA's statutory notice requirements. *See* 33 U.S.C. § 1365(b)(1)(A). On January 9, 2023, in a letter sent by certified mail, return receipt requested, to Phillip Surls, registered agent for Iron River Ranch and IronHorse, STC gave Iron River Ranch and IronHorse notice of the violations identified in this complaint and of its intent to file suit after 60 days should those violations continue. A true and correct copy of the notice letter, with documentation of its postmark and receipt, is attached as **Exhibit 1**.

7.      STC also mailed a copy of its notice letter by certified mail, return receipt requested, to the Administrator of the EPA, the Regional Administrator for EPA Region 6, the United States Attorney General, and the Interim Executive Director of Texas Commission on Environmental Quality ("TCEQ"). STC mailed a copy of its notice letter by first-class mail to the United States Army Corps of Engineers, the Texas Parks and Wildlife Department, and the Commissioners of the TCEQ.

8.      Sixty days have passed since STC served Iron River Ranch and IronHorse and federal and state agencies with notice of its intent to sue for the violations described in this complaint.

9.      Neither the EPA, nor the Corps of Engineers, nor the State has commenced or is diligently prosecuting an action to redress the violations described in STC's notice letter and alleged in this complaint.

10.     The violations identified in the notice letter are continuing at this time and are reasonably likely to continue in the future.

Plaintiff's Original Complaint                                                                                          2

## IV.   Parties

**Plaintiff STC**

11.     Save the Cutoff is a membership non-profit organization whose purposes include protection of the environmental quality and integrity of the Cutoff and other nearby waters in Henderson and Navarro Counties.  The members of STC have historically enjoyed fishing and recreating in the Cutoff along the Henderson County/Navarro County Line, as well as the portion of historical Cedar Creek connected to the Cutoff at this location.

12.     Dustin Baker is a member of STC.  Dustin Baker currently fishes in the historical waters of Cedar Creek near the site of the illegal discharge approximately once a week, and has done so since approximately 1992, and has been taking his children to fish with him since approximately 2015.  Mr. Baker is concerned that the illegal discharge of fill into historical Cedar Creek has negatively impacted the environment in the area and his aesthetic enjoyment of the environment.

13.     In order to access water within the historical bed of Cedar Creek, and the "Cutoff" which is connected to the historical Cedar Creek, Mr. Baker and other members of STC have frequently accessed historical Cedar Creek from the right-of-way of Farm-to-Market Road (FM) 1667.  Soon after Defendants placed the illegal fill in February of 2022, Defendants then constructed a metal fence upon that fill (within State Right of Way of FM 1667), which fence included wording entitled "No Trespassing."  This metal fence prevents Mr. Baker and others from using heavy boats to fish in historical Cedar Creek and the Cutoff, as they did previously. Instead, Mr. Baker and other members of STC must climb over the fence in order to access historical Cedar Creek and the Cutoff.  In order to boat within Cedar Creek and the Cutoff, they must lift boats over the fence by hand.  This results in the need for additional effort to

Plaintiff's Original Complaint                                                                                            3

reach historical Cedar Creek and the Cutoff, and also limits the size of boat which they are able to use.

14.     The illegal discharge of fill committed by Defendants has lessened the aesthetic and recreational value of historical Cedar Creek for Mr. Baker and other members of STC.  The illegal discharge of fill has degraded the physical, chemical, and biological integrity of the historical Cedar Creek.  Some of the fill is believed to have been transported from a property where the soil was contaminated by aviation operations, and chemicals from that contaminated fill are potentially leaching into the water, resulting in chemical contamination of historical Cedar Creek.

15.     The relief sought by this complaint will redress the harms to STC and its members caused by Defendants' unlawful discharges. Removal of the illegal fill will restore more effective access to Cedar Creek and the Cutoff.  Removal of the illegal fill will likewise enable the use of boats which currently cannot be carried over the fence due to weight.  Removal of the fill will likewise allow for remedial restoration of environmental features impacted by the illegal discharge of the fill.

16.     If successful, this action also will result in civil penalties that will deter future violations that would threaten STC's and its members' use and enjoyment of the areas and waters adjacent to and downstream from the location where Defendants' violations have occurred.

17.     STC and its members suffer actual, concrete injuries that are fairly traceable to Defendants' violations and are redressable by this Court. STC has no other adequate remedy at law.

**Defendants Iron River Ranch II, LLC and IronHorse Unlimited, Inc.**

18.    Defendant Iron River Ranch II, LLC is the owner of property identified as Property I.D. 231695 within the T.N. Jones Survey in Henderson County.  This property is adjacent to historical Cedar Creek.

19.    Iron River Ranch II, LLC is a Texas Domestic Limited Liability Company. Iron River Ranch II, LLC therefore is a "person" under CWA section 502(5), 33 U.S.C. § 1362(5) and subject to citizen suit enforcement under the CWA. *See* 33 U.S.C. § 1365(a)(1).

20.    Iron River Ranch's registered agent is Phillip Surls, whose mailing address is 11101 State Highway 31 West, Malakoff, Texas 75148.

21.    Defendant IronHorse Unlimited, Inc. is an engineering and construction company which engages in planning, engineering, and construction activities.

22.    IronHorse Unlimited's registered agent is the same Phillip Surls as is the registered agent for Iron River Ranch II, LLC.

### V.    <u>Legal Background</u>

**The Clean Water Act**

23.    Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  To achieve this goal, the CWA prohibits the discharge of pollutants, including dredged or fill material, into navigable waters unless authorized by a CWA permit. 33 U.S.C. §§ 1311(a), 1344, 1362(6) (listing rock and sand, among other things, as pollutants under the CWA).

24.    Discharges of dredged or fill material into Waters of the United States may only occur if permitted by the United States Army Corps of Engineers. 33 U.S.C. §§ 1311(a), 1344(a).

25.    The excavation of material from one portion of a wetland and placement of that material into another portion of the same wetland constitutes "sidecasting," which is an illegal discharge of pollutants under the Clean Water Act.  *U.S. v. Deaton,* 209 F.3d 331, 335 (4th Cir., 2000).

26.    The term "Waters of the United States," as intended by the EPA to be adopted by regulation published in the Federal Register January 18, 2023, and intended by the EPA to be effective March 20, 2023, includes permanent or standing bodies of water that are tributaries of waters which were used in the past or may be susceptible to use in interstate commerce. 33 C.F.R. § 328.3(a) (effective March 20, 2023) ("the 2023 Rule").

27.    The term "Waters of the United States," as set forth by federal regulation effective immediately prior to March 20, 2023, includes waters that were used in the past, or may be susceptible to use in interstate commerce, and tributaries of such waters, as well as lakes and ponds and impoundments of such jurisdictional waters. 33 C.F.R. § 328.3(a) (effective immediately prior to March 20, 2023, pursuant to *Pascua Yaqui Tribe v. EPA,* 557 F.Supp.3d 949 (D. Arizona Aug. 30, 2021)) ("*Pascua*").

28.    The United Stated District Court for the Southern District of Texas on March 19, 2023 issued a memorandum opinion and order granting preliminary injunction enjoining enforcement of the 2023 Rule in the states of Texas and Idaho in the case of *State of Texas, et al. v. United States Environmental Protection Agency, et al.,* No. 3:23-cv-17, slip op. at 34 (S.D.Tex. Mar. 19, 2023) ("*Texas*").  Plaintiff disagrees with this ruling, and contends that the 2023 Rule should properly be enforceable.  But, the waters impacted by Defendants' discharges in the immediate case are permanent navigable waters, and are "Waters of the United States" under the prior standard for determining "Waters of the United States" put in place by *Pascua,* remaining in effect in Texas even under the March 19, 2023 Order issued in

the *Texas* case. Thus, the immediate case does not require that the Court reach the question of whether issuance of the 2023 Rule was a valid exercise of EPA's authority.

29.    Should the Court find that the waters receiving the discharge are not Waters of the United States under the standard in place pursuant to *Pascua,* Plaintiff asserts that the waters receiving the discharge are properly considered Waters of the United States under the 2023 Rule.

**Citizen Enforcement**

30.    The CWA authorizes any citizen to file a civil action against any person who commits an unlawful act under 33 U.S.C. § 1311, including the discharge of a pollutant without authorization pursuant to 33 U.S.C. § 1344. Subsection (a) of the citizen suit provision, entitled "Authorization; jurisdiction," instructs: "Except as provided in subsection (b) of this section..., any citizen may commence a civil action on his own behalf... against any person... who is alleged to be in violation of... an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1).  Section 1365(f), in turn, provides a seven-part definition of "effluent standard or limitation under this chapter." Relevant here, § 1365(f)(1) allows citizen suits for "an unlawful act under subsection (a) of section 1311 of this title." Section 1311(a), titled "[i]llegality of pollutant discharges except in compliance with law," provides that "[e]xcept as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful."

31.    CWA section 505, 33 U.S.C. § 1365, also authorizes citizens to seek injunctive relief, civil penalties, and litigation costs.

32.    For violations occurring after November 2, 2015 and assessed after January 6, 2023, each separate violation of the CWA subjects the violator to a penalty of up to $64,618 per day, per violation, pursuant to sections 309(d) and 505(a) of the CWA. 33 U.S.C. §§ 1319(d), 1365(a),

and 40 C.F.R. § 19.4 (2009) (Adjustment of Civil Monetary Penalties for Inflation). Section 505(d) of the CWA, 33 U.S.C. § 1365(d), allows prevailing or substantially prevailing parties to recover litigation costs, including attorney's fees and expert witness fees.

33.     The CWA subjects citizen suits to two limitations. 33 U.S.C. § 1365(b). First, sixty days before filing a citizen suit, the citizen must give notice of the alleged violation to the alleged violator, the EPA, and the State in which the alleged violation occurs. § 1365(b)(1)(A). Sixty days after giving notice, citizens may bring an action in federal district court to enforce any ongoing violations of the CWA. The Supreme Court has stated that "the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc*., 484 U.S. 49, 60 (1987). Furthermore, "[t]he requirement that notice be given to the responsible officials highlights their primary role in enforcing the Act compared to the supplementary position of the citizen." *Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 396 (5th Cir. 1985).

34.     Second, the Act bars a citizen suit if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B).

35.     Where, as here, the EPA or State fails to act within the sixty-day notice period, a citizen suit is appropriate. *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008) ("The citizen-suit provision is a critical component of the CWA's enforcement scheme, as it 'permit[s] citizens to abate pollution when the government cannot or will not command compliance.'") (alteration in original).

## VI.     Facts

36.     STC fully incorporates **Exhibit 1**¸ including all attachments to **Exhibit 1**, into this complaint.

37.     The Trinity River is a prominent river in East Texas which constitutes the boundary between Henderson and Navarro Counties. Cedar Creek is a tributary of the Trinity River located southwest of Trinidad, Texas.  During the 1920s, several levees were built which redirected a portion of the Trinity River and Cedar Creek.  As a result, a certain portion of the natural course of the Trinity River was partially separated from the redirected course of the Trinity River, and a certain portion of the natural course of Cedar Creek was partially separated from the redirected course of Cedar Creek.  That partially separated natural course of Cedar Creek is referenced herein as "historical" Cedar Creek.  It is also sometimes referenced as Creslenn Ranch Lake. The portion of the Trinity River which was partially separated from the redirected flow of the Trinity River is commonly referred to as the "Cutoff."

38.     The separation of historical Cedar Creek, and the historical Trinity River is only partial. Culverts still exist which connect historical Cedar Creek with the redirected flow of Cedar Creek.  Water moves through these culverts into historical Cedar Creek under flood conditions. Furthermore, culverts exist downstream of historical Cedar Creek at the downstream end of the Cutoff.  Those culverts continue to convey water from historical Cedar Creek through the historical Trinity River into the Trinity River downstream of this levee system. Thus, historical Cedar Creek remains a tributary of the current Trinity River.



**Depiction of The Cutoff and Cedar Creek**
**(From 1981 United States Geologic Survey Creslenn Ranch Quadrangle Map)**

39.    FM 1667 is a roadway that now exists crossing the original bed of Cedar Creek.

40.    Prior to February of 2022, the bank of Cedar Creek extended to within the right-of-way of

FM 1667.  Prior to February of 2022, utility poles along the right-of-way were effectively co-

extensive with the boundaries of Cedar Creek. Under these conditions, Cedar Creek extended

to within the right-of-way of FM 1667, allowing the public to use that right-of-way to access

Cedar Creek to exercise their public right to fish in State waters.



**January 2022 aerial photograph of FM 1667 adjacent to Cedar Creek**

41.    In February of 2022, IronHorse, as a contractor or agent of Iron River Ranch, placed fill within historical Cedar Creek alongside FM 1667 in this area.  Fill was placed to a degree that placed the resulting bank of Cedar Creek well beyond the utility poles in the area, and a fence was installed which was apparently intended to prevent public access to Cedar Creek and the Cutoff. Texas Parks and Wildlife Department Staff observed and documented this activity. The fence installed included lettering stating "No Trespassing."



**IronHorse Equipment Placing Fill in Historical Cedar Creek on February 17, 2022
(Photograph taken by Texas Parks and Wildlife Personnel)**

42.    Much of the fill placed in the right of way of FM 1667 was derived from another area of historic Cedar Creek.  In this manner, much of the activity occurring constituted sidecasting. Other material used as fill was brought in from other properties.

43.    On March 8, 2022, the United States Army Corps of Engineers (USACE), Fort Worth District, sent a letter to Iron River Ranch LLC, via "Mr. Philip Sorls" [sic] stating that "it appears that an unauthorized discharge of dredged or fill material has occurred into Creslenn Ranch Lake." The USACE went on to note that, "[t]he work referred to above has occurred in water subject to Section 404 statutory requirements without the requisite permit."

44.    The fill placed in historical Cedar Creek in February of 2022 remains present in the Creek. The fill activities conducted in February of 2022 by IronHorse for Iron River Ranch resulted in the runoff of sediment into Cedar Creek.  During rainfall events, sediment continues to be discharged into Cedar Creek as a result of the placement of this fill.

## VII.   First Claim for Relief
### (Violations of Conditions III(A)(4) and III(E)(2)(b))

45.     STC incorporates each and every allegation set forth above.

46.     CWA Sections 301 and 404 (33 U.S.C. §§ 1311 & 1344) require that a person obtain a permit prior to the placement of fill within a Water of the United States.

47.     Defendants' placement of fill within historical Cedar Creek on or about February 17, 2022 without a permit, and action in leaving that fill in place, constitutes an ongoing violation of CWA Sections 301 and 404 (33 U.S.C. §§ 1311 & 1344).  This violation has been repeated each day since on or about February 17, 2022.

48.     The historical Cedar Creek constitutes a "Water of the United States" under either the rules published by the EPA January 18, 2023 and designated effective March 20, 2023, or the rules effective immediately prior to March 20, 2023.  This portion of the historical Cedar Creek is a permanent body of water which is a tributary of the Trinity River.  The Trinity River is a water used in the past for interstate commerce, and is still susceptible to such use.

49.     Each date of violation is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 404, 33 U.S.C. § 1344, of the CWA.

50.     Neither the EPA nor the State of Texas is diligently prosecuting these violations.

51.     Defendants' violations constitute ongoing violations of the CWA.

52.     Defendants' continuing commission of the acts and omissions alleged in this complaint irreparably harms the waters of the United States in the historical Cedar Creek area, as well as STC and its members, for which harm they have no adequate remedy at law.

## VIII.    <u>Prayer for Relief</u>

53.     STC respectfully asks this Court to:

54.     Issue a declaratory judgment stating that Defendants have violated and are continuing to violate the Clean Water Act with their discharges of fill into Waters of the United States without a permit;

55.     Grant appropriate injunctive relief to ensure that Defendants remove the illegally-discharged fill, and address the local environmental effects of the illegal discharges;

56.     Retain jurisdiction over this matter until such time as Defendants have come into compliance with the prohibitions, terms, and conditions of the CWA and the injunctive relief ordered by this Court;

57.     Assess civil penalties against Defendants of up to $64,618 per violation, per day, as provided by 33 U.S.C. §§ 1319(d) and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. pt. 19;

58.     Award STC its costs, including reasonable attorney's fees, as authorized under the CWA. 33 U.S.C. § 1365(d); and

59.     Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on March 22, 2023.

By:
 /s/ Eric Allmon
Eric Allmon
Texas Bar No. 24031819
eallmon@txenvirolaw.com

**PERALES, ALLMON & ICE, P.C.**
1206 San Antonio St.
Austin, Texas 78701
Tel: (512) 469-6000
Fax: (512) 482-9346

*Attorney for Save the Cutoff*

## **<u>EXHIBITS</u>**

Exhibit 1 – Plaintiff STC's Notice of Intent to Sue Letter and Documentation of Postmark and Receipt (January 9, 2023).